**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| Hartford Casualty Insurance Company, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:26-cv-11097 |
| Sheri Bowles, in her official capacity as | § | |
| Director of the Massachusetts Department of | § | |
| Industrial Accidents; Lauren Jones, in her | § | |
| official capacity as Secretary of the Executive | § | |
| Office of Labor and Workforce Development | § | |
| of the Commonwealth of Massachusetts; | § | |
| Workers' Compensation Trust Fund; and | § | |
| Atlantic Specialty Insurance Company, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE**
**COMMONWEALTH DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.　INTRODUCTION .................................................................................................. 1

II.　FACTUAL BACKGROUND ................................................................................ 2

　　A.　The Commonwealth Failed to License Steward as a Self-Insurer for Workers' Compensation Claims in 2024 ................................................................... 2

　　B.　The Commonwealth Tried to Force Hartford to Pay for the Commonwealth's Errors ........................................................................................................... 3

　　C.　This Lawsuit ................................................................................................ 4

III.　STANDARD OF REVIEW ................................................................................. 5

IV.　ARGUMENT ...................................................................................................... 6

　　A.　Hartford's Claims Fall Squarely Within the *Ex parte Young* Exception to Sovereign Immunity ....................................................................................... 6

　　B.　The Commonwealth Defendants Cannot Recharacterize Hartford's Claims to Support Their Immunity Arguments ............................................................. 9

　　　　1.　Hartford Properly Seeks Declaratory and Injunctive Relief on its Takings Claims ...................................................................................... 9

　　　　2.　Hartford's Claims Are Not Prohibited as Questions of State Law ............... 13

　　C.　Hartford's Declaratory Judgment Claim is Not Barred ............................... 16

V.　CONCLUSION ................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*99 Cents Only Stores v. Lancaster Redevelopment Agency*,
    237 F. Supp. 2d 1123 (C.D. Cal. 2001) ...................................................................12

*A.G. by and through Maddox v. Elsevier, Inc.*,
    732 F.3d 77 (1st Cir. 2013).................................................................................5

*Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad*
    *Obligatorio v. Flores Galarza*,
    484 F.3d 1 (1st Cir. 2007).............................................................................10, 12

*Bangor Baptist Church v. State of Me., Dept. of Educational and Cultural Servs.*,
    549 F. Supp. 1208 (D. Me. 1982) ...........................................................................15

*Blair v. Dep't of Conservation & Recreation*,
    932 N.E. 2d 267 (Mass. 2010) .................................................................................7

*Brito v. Garland*,
    22 F.4th 240 (1st Cir. 2021)...................................................................................16

*Brown v. New York*,
    975 F. Supp. 2d 209 (N.D.N.Y. 2013).....................................................................15

*Butler v. Balolia*,
    736 F.3d 609 (1st Cir. 2013)...................................................................................5

*California v. U.S. Dep't of Transp.*,
    808 F. Supp. 3d 291 (D.R.I. 2025)...........................................................................13

*Cienega Gardens v. United States*,
    331 F.3d 1319 (Fed. Cir. 2003)................................................................................12

*City of Providence v. Barr*,
    954 F.3d 23 (1st Cir. 2020).....................................................................................13

*Cotto v. Campbell*,
    126 F.4th 761 (1st Cir. 2025)..................................................................................16

*Cottonwood Christian Center v. Cypress Redevelopment Agency*,
    218 F. Supp. 2d 1203 (C.D. Cal. 2002) ...................................................................11

*Daly v. Mason*,
    752 F. Supp. 3d 368 (D. Mass. 2024) .....................................................................6, 8

*Daniels v. Area Plan Comm'n of Allen County*,
    306 F.3d 445 (7th Cir. 2002) ..................................................................................12

*Doe v. Shibinette*,
  16 F.4th 894 (1st Cir. 2021)........................................................................................6, 14

*Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations*,
  643 F.3d 16 (1st Cir. 2011).............................................................................................5

*Eastern Enterprises v. Apfel*,
  524 U.S. 498 (1998).................................................................................................11, 12

*Edelman v. Jordan*,
  415 U.S. 651 (1974).........................................................................................................8

*El Dia, Inc. v. Hernandez Colon*,
  963 F.2d 488 (1st Cir. 1992).........................................................................................16

*Fideicomiso de la Tierra del Cano Martin Pena v. Fortuño*,
  604 F.3d 7 (1st Cir. 2010).............................................................................................11

*Fritz v. Arthur D. Little, Inc.*,
  944 F. Supp. 95 (D. Mass. 1996) ....................................................................................5

*Great River Industries, Inc. v. Public Service Comm'n of Puerto Rico*,
  131 F. Supp. 2d 265 (D.P.R. 2001).................................................................................5

*Rosie D. ex rel. John D. v. Swift*,
  310 F.3d 230 (1st Cir. 2002)...........................................................................................6

*Knick v. Township of Scott, Pa.*,
  588 U.S. 180 (2019).......................................................................................................10

*Larson v. Domestic & Foreign Commerce Corp.*,
  337 U.S. 682 (1949).......................................................................................................15

*Massachusetts v. Wampanoag Tribe of Gay Head*,
  98 F. Supp. 3d 55 (D. Mass. 2015) .................................................................................6

*Narrigan v. Goldberg*,
  772 F. Supp. 3d 182 (D. Mass. 2025) ...........................................................................10

*Negron–Gaztambide v. Hernandez–Torres*,
  35 F.3d 25 (1st Cir. 1994)...............................................................................................5

*New Hampshire Ins. Guar. Ass'n v. Markem Corp.*,
  676 N.E.2d 809 (Mass. 1997) .......................................................................................15

*OA VW LLC et. al. v. Mass. DOT et. al.*,
  1:13-cv-11028-NMG (D. Mass. Sept. 23, 2015) ..........................................................15

*OA VW LLC v. Mass. DOT*,
  76 F. Supp. 3d 374 (D. Mass. 2015) .............................................................................15

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)..................................................................................................14

*Quinones v. Landron*,
  99 F.2d 618 (1st Cir. 1938).....................................................................................16

*St. Paul Fire & Marine Ins. Co. v. Department of Indus. Accidents*,
  14 N.E.3d 968 (Ma. Ct. App. 2014)..........................................................................9

*Town of Barnstable v. O'Connor*,
  786 F.3d 130 (1st Cir. 2015).................................................................................6, 8

*United States v. Horn*,
  29 F.3d 754 (1st Cir. 1994)...................................................................................7, 8

*Vaqueria Tres Monjitas, Inc. v. Irizarry*,
  587 F.3d 464 (1st Cir. 2009)....................................................................................8

*Ex parte Young*,
  209 U.S. 123 (1908).......................................................................................*passim*

*Youpee v. Babbitt*,
  67 F.3d 194 (9th Cir. 1995) ...................................................................................11

*Zoning Bd. of Appeals of Amesbury v. Housing Appeals Committee*,
  933 N.E.2d 74 (Mass. 2010) ..................................................................................15

**Rules**

Federal Rules of Civil Procedure 12(b)(1)..........................................................................5

Federal Rules of Civil Procedure 12(b)(6)..........................................................................5

**Statutes and Regulations**

42 U.S.C. § 1983................................................................................................................8

452 CMR 5.03...................................................................................................................3

**Other Authorities**

Avoiding Sovereign Immunity: the Doctrine of Ex Parte Young, 13 Fed. Prac. &
  Proc. Juris. § 3524.3 § 3524.3 (3d ed.) ....................................................................6

*Reinsurance*, Black's Law Dictionary (12th ed. 2024)......................................................4

iv

## I.    INTRODUCTION

On January 1, 2024, the Commonwealth Officials[1] allowed a large employer in Massachusetts to become uninsured for workers' compensation claims.  When the employer was unable to pay injured workers, the Commonwealth Officials did not own up to their errors.  Instead, the Commonwealth Officials tried to foist the consequences of their failures on a private entity, Hartford Casualty Insurance Company ("Hartford").  This lawsuit challenges their actions.

This suit is about whether Commonwealth Officials can act *ultra vires* and in violation of the United States Constitution by forcing a private entity to take responsibility for millions of dollars in workers' compensation claims in the absence of any authority permitting such actions. Federal courts must address these types of suits to hold state officials accountable for unconstitutional actions.  This case thus presents federal questions that are squarely within the province of this Court.

Yet the Commonwealth Officials seek to avoid this Court's jurisdiction on sovereign immunity grounds.  *See* ECF 15.  As the Commonwealth Officials concede, however, sovereign immunity does not apply "where prospective relief is sought in federal court against an individual state official to enjoin a continuing violation of the Constitution or federal law."  *See* ECF 15 at 11.  That is exactly what Hartford seeks here.  Hartford seeks prospective, equitable relief to enjoin the Commonwealth Officials from converting its reinsurance contracts into primary insurance policies in violation of the Takings Clause and acting *ultra vires*.  Hartford seeks no compensatory damages or retrospective relief from the Commonwealth; it seeks only to halt unconstitutional and *ultra vires* action.  The Commonwealth Officials cannot recharacterize Hartford's claims as

---

[1] The Commonwealth Officials are Sheri Bowles, in her official capacity as Director of the Massachusetts Department of Industrial Accidents ("DIA") and Lauren Jones, in her official capacity as Secretary of the Executive Office of Labor and Workforce Development of the Commonwealth of Massachusetts.  The Commonwealth Officials, together with the Workers' Compensation Trust Fund, are referred to herein as the Commonwealth Defendants.

"garden-variety insurance coverage" claims to try and avoid this Court's scrutiny of their actions. *See* ECF 15 at 1. Simply put, the cloak of sovereign immunity cannot be worn here.

Accordingly, Hartford respectfully requests that the Court deny—with prejudice and in its entirety—the Commonwealth Defendants' Motion to Dismiss (ECF 15).

## II. FACTUAL BACKGROUND

### A. The Commonwealth Failed to License Steward as a Self-Insurer for Workers' Compensation Claims in 2024

Steward Health Care System, LLC ("Steward") was self-insured in Massachusetts for workers' compensation claims for each one-year period from January 1, 2019 through January 1, 2024. *See* Compl. (ECF 1) ¶ 24. As a self-insurer, Steward was responsible for the first $500,000 or $750,000 of each workers' compensation claim, depending on the year. *Id.* ¶¶ 30, 43.

The Massachusetts Workers' Compensation Act ("Act") requires annual renewal of self-insurance licenses. *Id.* ¶ 18. The renewal process for Steward to obtain a license for the one-year period from January 1, 2024 through January 1, 2025 was mandated to commence no later than November 2, 2023. *Id.* ¶¶ 18, 35.

Hartford has no indication that the Commonwealth Officials commenced the process by November 2, 2023. Instead, on July 26, 2024—more than halfway through the purported licensure period—the Commonwealth advised Steward by letter that they would provisionally approve Steward retroactively for a one-year license commencing on January 1, 2024. *See id.* ¶¶ 38–39. The letter does not identify any authority permitting provisional approval of a self-insurance license, let alone retroactive provisional approval.

The "provisional approval" was on the express condition that Steward immediately furnish a surety bond for 2024 in the amount of $31,970.00. *Id.* This condition requiring a bond to be posted before approval of a license was consistent with the statutory framework and regulations, which provide that, where a bond is selected as the financial guaranty for a self-insurer, the bond

is a "condition precedent" to annual licensure.  *See id.* ¶ 19; *see also* 452 CMR 5.03.  The purpose of the bond is to pay for claims within the self-insurer's responsibility, if the self-insurer is unable to pay.  *Id.*

Steward never posted the requisite bond.  *Id.* ¶ 39.

Despite Steward's failure to post the bond, the Commonwealth Officials nonetheless continued to list Steward on DIA's website as a licensed self-insurer continuously through 2024. *Id.* ¶ 40.  The Commonwealth Officials thus represented to the public that Steward was still self-insured in 2024 even though Steward never met the mandatory requirements for self-insurance.

**B.    The Commonwealth Tried to Force Hartford to Pay for the Commonwealth's Errors**

Steward filed for bankruptcy on May 6, 2024, and, in mid-2025, ceased paying workers' compensation claimants.  *Id.* ¶ 47.  Atlantic Specialty Insurance Company ("ASIC")—the surety that bonded Steward for the self-insured periods of January 1, 2019 to January 1, 2024—refused to pay claims within Steward's self-insurance retention.  *Id.* ¶¶ 49–50.

The Commonwealth Officials turned to Hartford to pay the claims because Hartford reinsured Steward for each one-year period from January 1, 2019 to January 1, 2024.  *Id.* ¶¶ 29, 51.  Unaware of the Commonwealth Officials' failure to license Steward, Hartford issued Steward similar contracts for the period of January 1, 2024 to January 1, 2025, *id.* ¶ 43 n.5, and the Commonwealth Officials demanded payment under those agreements, too, *id.* ¶ 51.

Hartford explained it had no obligation to pay the claims.  The Hartford agreements reinsure individual claims in excess of $500,000 or $750,000, depending upon the year; they do not pay from the first dollar of a loss.  *Id.* ¶¶ 29, 43, 51.  In addition, for 2024–25 specifically, Steward was never self-insured as it never met the statutory requirements.  *Id.* ¶¶ 35–40.  Hartford therefore could not have reinsured Steward—that is, Hartford cannot have "reinsured" an entity

that was never "insured" in the first instance.[2]    Despite the Commonwealth Officials failing to ensure Steward had a proper form of workers' compensation insurance as required, the Commonwealth Officials insisted Hartford was obligated to pay Steward's claims. The Commonwealth Officials did not offer Hartford any compensation in connection with their demand for coverage of the workers' compensation claims.

### C.    This Lawsuit

The parties attempted to resolve their dispute for at least eight months but the process stalled.   Hartford thus brought this suit seeking prospective relief on four counts against the Commonwealth Defendants: (1) violation of the Takings Clause of the United States Constitution by converting, without any compensation, reinsurance policies for extraordinary losses into primary policies; (2) violation of the Massachusetts Declaration of Rights for similar reasons; (3) acting *ultra vires* because there is no authority permitting the Commonwealth Officials to create retroactive provisional licenses for entities that do not satisfy the conditions precedent for licensure or force reinsurers to become primary insurers; and (4) declaratory relief that the Commonwealth Officials cannot require Hartford to pay for any claims in 2024 and, for claims pre-January 1, 2024, cannot force payment of claims less than the self-insured retention.

The Commonwealth Officials moved to dismiss on sovereign immunity grounds.  ECF 15. Hartford now opposes.

---

[2] Reinsurance is "[a] contractual arrangement under which one insurer, known as the primary or ceding insurer, transfers to another insurer, known as the reinsurer, some or all loss for which it has issued an insurance policy." *Reinsurance*, Black's Law Dictionary (12th ed. 2024). "Excess-of-loss reinsurance" is "[r]einsurance that is not pro rata and that begins to pay when loss exceeds a stated or defined amount." *Id.*

## III.    <u>STANDARD OF REVIEW</u>

The Commonwealth Defendants bring their motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3] "In ruling on a 12(b)(1) motion or a 12(b)(6) motion the Court must abide by virtually identical standards." *Great River Industries, Inc. v. Public Service Comm'n of Puerto Rico*, 131 F. Supp. 2d 265, 268 (D.P.R. 2001).

On a Rule 12(b)(1) motion, where, as here, defendants do not challenge the plaintiff's version of the jurisdictionally-significant facts, the Court accepts as true the well-pled factual allegations in the plaintiff's complaint and makes all reasonable inferences in the plaintiff's favor. *See Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations*, 643 F.3d 16, 17 (1st Cir. 2011); *Butler v. Balolia*, 736 F.3d 609, 617 (1st Cir. 2013) ("[T]he averments of the complaint must be taken in the light most favorable to the plaintiff."). The Court must "draw all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory." *Fritz v. Arthur D. Little, Inc.*, 944 F. Supp. 95, 102 (D. Mass. 1996) (quoting *Roth v. United States*, 952 F.2d 611, 613 (1st Cir. 1991)). Similarly, on a 12(b)(6) motion, the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *A.G. by and through Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). For both Rule 12(b)(1) and (b)(6) motions, a court will not dismiss the plaintiff's claim "unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of [its] claim which would entitle [it] to relief." *Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir. 1994) (internal quotation omitted).

---

[3] While the Commonwealth Defendants bring their motion under both Rules 12(b)(1) and (b)(6), they make no argument that Hartford fails to state a claim upon which relief can be granted.

5

## IV.    ARGUMENT

The Commonwealth Officials broadly argue they have sovereign immunity as to all counts. They are wrong.  Hartford seeks only prospective declaratory and injunctive relief to halt an ongoing constitutional violation and *ultra vires* agency action, placing this case squarely within the *Ex parte Young* exception to sovereign immunity.  The Commonwealth Officials cannot recharacterize Hartford's claims as arising under state law to avoid this Court's jurisdiction.

### A.    Hartford's Claims Fall Squarely Within the *Ex parte Young* Exception to Sovereign Immunity

Under the well-established doctrine of *Ex parte Young*, 209 U.S. 123 (1908), sovereign immunity does not bar suits seeking prospective declaratory and injunctive relief against state officials to halt ongoing violations of federal law.  *See Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015); *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002) (explaining that *Ex parte Young* is a "well recognized exception" to sovereign immunity); *see also* ECF 15 at 11 (stating same).  To determine whether a claim is authorized under *Ex parte Young*'s umbrella, " 'a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Doe v. Shibinette*, 16 F.4th 894, 903 (1st Cir. 2021) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)); *Daly v. Mason*, 752 F. Supp. 3d 368, 378 (D. Mass. 2024) (allowing claims to proceed against state officials "to the extent they seek prospective injunctive relief").  So long as the plaintiff makes "an allegation that [a state] official is interfering, or is about to interfere, with a federally protected right[,]" and there is no retroactivity, relief is available.  *See Massachusetts v. Wampanoag Tribe of Gay Head*, 98 F. Supp. 3d 55, 75 (D. Mass. 2015); § 3524.3 Avoiding Sovereign Immunity: the Doctrine of Ex Parte Young, 13 Fed. Prac. & Proc. Juris. § 3524.3 (3d ed.) (noting that *Ex parte Young* "remains vital" today).

6

All of Hartford's claims fall squarely within *Ex parte Young*.[4]  Hartford asks this Court to enjoin the Commonwealth Officials from perpetuating an ongoing violation of the Takings Clause and to end ongoing *ultra vires* agency action.[5]  Hartford seeks no compensatory damages.  Indeed, if Hartford prevails, the judgment would require no compensatory funds to be paid from the Commonwealth's treasury to Hartford.[6]

*Ex parte Young* itself involved similar relief.  There, railroad companies sought injunctive relief "restraining the enforcement of the rates fixed by the railroad and warehouse commission" under state law, which they argued "were confiscatory and did not afford reasonable compensation for the service rendered."  209 U.S. at 133.  The Supreme Court held that such prospective relief was permissible because the plaintiffs alleged an ongoing violation of the Constitution.  *Id.* at 159.

---

[4] Count 2 is a mirror of Count 1 under the Massachusetts Declaration of Rights and should remain to the extent of overlap, as the Massachusetts provision is interpreted in tandem with the federal constitution.  *See Blair v. Dep't of Conservation & Recreation*, 932 N.E. 2d 267, 274 (Mass. 2010).  To the extent the Commonwealth Officials view this Court's application of the tie between the U.S. Constitution and the Massachusetts Declaration of Rights as an affront to sovereignty, then this Court need not declare that the Commonwealth Officials have violated the Massachusetts Declaration of Rights too.  Hartford is content with a declaration that the Commonwealth Officials have violated the U.S. Constitution and acted *ultra vires* and with an injunction that prohibits such violations.

[5] Director Bowles and Secretary Jones are named in the Complaint, *see* ECF 15 at 11 n.5, because they are state officials responsible for the administration and oversight of the Department of Industrial Accidents.  *See Ex parte Young*, 209 U.S. at 157 ("The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact.").  The Commonwealth Defendants do not dispute that Director Bowles and Secretary Jones are connected to the agency action challenged by Hartford's complaint.

[6] It is black-letter law that "'an award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment[,]'" and does not constitute "compensation" as such.  *See  United States v. Horn*, 29 F.3d 754, 766 (1st Cir. 1994) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 279 (1989)).

Just as in *Ex parte Young*, the constitutional infirmity Hartford alleges lies not in a single discrete act, but in a continuing regulatory regime that operates to deny just compensation on an ongoing basis. In *Ex parte Young*, the allegedly confiscatory rate structure forced regulated entities to provide services at a loss, with no meaningful mechanism for contemporaneous compensation. Here, the Commonwealth Officials seek for Hartford to provide primary insurance—which it did not underwrite and for which it received no commensurate premium—with no mechanism to obtain compensation for that compelled assumption of risk. The equitable and declaratory relief Hartford seeks here would simply prevent state officials from enforcing a regulatory approach that exceeds constitutional limits, and would not require the Commonwealth to pay money damages to Hartford.[7]

As the Supreme Court recognized in *Edelman v. Jordan*, 415 U.S. 651, 667–68 (1974), the "fiscal consequences" of the Commonwealth Officials' compliance with this Court's ruling would not be damages, but only "the necessary result of compliance with decrees which . . . [a]re prospective in nature." *See also Town of Barnstable*, 786 F.3d at 140 ("*Ex parte Young* doctrine's very existence means that a plaintiff may frustrate the efforts of a state policy when those efforts violate or imminently threaten to violate the plaintiff's constitutional rights and the plaintiff confines its request to the proper form of relief."); *cf. Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 480 (1st Cir. 2009) (deciding Eleventh Amendment did not bar injunctive relief resulting in surcharge that would be placed in accrual account for the benefit party); *Horn*, 29 F.3d at 766

---

[7] To the extent that the Commonwealth Officials contend that Hartford's claims fail because state officials sued in their official capacities are not "persons" under 42 U.S.C. § 1983, ECF 15 at 9, 14, that argument misunderstands the nature of Hartford's suit. The Section 1983 "personhood" limitation bars claims for damages against the Commonwealth and its officials, but it does not apply to suits for prospective declaratory or injunctive relief under the *Ex parte Young* doctrine. *See Daly*, 752 F. Supp. 3d at 375–78 (denying motion to dismiss "to the extent [plaintiffs] seek prospective injunctive relief against Defendants in their official capacity" for violations of federal law).

(holding that attorneys' fees ancillary to prospective relief are not damages).  The fact that the Commonwealth might use the Workers Compensation Trust Fund[8] to pay claims for an uninsured employer (ECF 15 at 15)—one of the very reasons the Fund exists—does not transform Hartford's suit for equitable and declaratory relief into one for damages.

In short, the prospective equitable relief Hartford seeks here for the Commonwealth Officials' violation of the Takings Clause and *ultra vires* actions falls squarely within *Ex parte Young*.  The Commonwealth Officials thus are not entitled to sovereign immunity.

**B.**     **The Commonwealth Officials Cannot Recharacterize Hartford's Claims to Support Their Immunity Arguments**

The Commonwealth Officials concede that *Ex parte Young* is an exception to sovereign immunity.  *See* ECF 15 at 11.  Yet they try to avoid *Ex parte Young* by limiting their analysis of it to the Takings claim (Count 1).  For the reasons explained below, the Commonwealth Officials are wrong in their Takings analysis, and they cannot skirt *Ex parte Young* for the other counts.

**1.**     **Hartford Properly Seeks Declaratory and Injunctive Relief on its Takings Claims**

With no acknowledgment of the specific facts of this matter, the Commonwealth Officials assert that they are entitled to sovereign immunity on the Takings claim because Hartford has an adequate remedy at law in state court.  *See* ECF 15 at 9–14.  But the Commonwealth Officials never explain how Hartford could seek "just compensation" for the type of taking at issue here— indefinite coverage of workers' compensation claims as a primary insurer when Hartford did not receive premium to provide that kind of coverage.  The Commonwealth Officials also fail to address the ongoing and prospective nature of the taking.  Each time Hartford is forced to cover a

---

[8] The Fund routinely appears in actions pertaining to potential payments from the Fund so it was included here.  *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Department of Indus. Accidents*, 14 N.E.3d 968 (Table) at *1 (Ma. Ct. App. 2014) (Trust Fund intervening).  Hartford would agree to dismiss the Fund without prejudice.

workers' compensation claim—the volume and duration of which are unknown at present—it will be subject to a fresh Takings injury.

While some takings may have adequate legal remedies (*see* ECF 15 at 11–14),[9] that is not true for all.  A Takings Clause claim can properly seek equitable or injunctive relief.  In *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, for example, the First Circuit affirmed "denial of Eleventh Amendment immunity" on a Fifth Amendment Takings Clause claim akin to that here.  484 F.3d 1, 16–20 (1st Cir. 2007).  There, the plaintiff sought "a declaration that the taking of insurance premiums" by a state official violated the Takings Clause of the Constitution and further sought an injunction to enjoin the official from requiring the transfer of certain funds.  *Id.* 24.  The First Circuit "agree[d] with the district court that" the requests were "for prospective declaratory and injunctive relief that is not barred by the Eleventh Amendment."  *Id.*  Simply put, the availability of injunctive relief for a Takings claim is fact-specific.  *See also Narrigan v. Goldberg*, 772 F. Supp. 3d 182, 193–94 (D. Mass. 2025) (acknowledging that its conclusion on "availability of injunctive relief might be different" if the Commonwealth refused interest payments because the "scenario could implicate a prospective or ongoing constitutional violation capable of redress through resort to *Ex parte Young*").  There is no outright prohibition on seeking injunctive relief to preclude a taking.

---

[9] The Commonwealth Officials rely heavily on *Knick v. Township of Scott, Pa.*, 588 U.S. 180 (2019) for this proposition.  But *Knick* involved a straightforward taking of private land for public use, nothing akin to the ongoing, indefinite workers' compensation claims here.  More significantly, *Knick* recognized that "the self-executing Fifth Amendment" permits injured parties like Hartford to "bring a federal suit at [the] time" of the taking.  *Id.* at 194.  "[P]ursuit of a remedy in federal court need not await any subsequent state action."  *Id.* at 202.  In other words, *Knick* recognized the importance of the federal judiciary in protecting entities from unconstitutional actions.

10

Indeed, where government action creates severe, retroactive, and unforeseeable liability for a small group of parties, an injunction may issue.  In *Eastern Enterprises v. Apfel*, 524 U.S. 498, 521–22, 528–37 (1998), for instance, the Supreme Court enjoined a law assigning liability for insolvent coal-miner pension funds to past and present industry participants, with a plurality holding this was a taking.[10]  *See also Youpee v. Babbitt*, 67 F.3d 194, 200 (9th Cir. 1995), *aff'd* 519 U.S. 234 (1997) (enjoining law abolishing devise and descent for fractionalized Native American land rather than simply condemning the land and paying compensation, and thus acting as a regulatory taking).  The Supreme Court expressly held that "the Declaratory Judgment Act 'allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained.'" *Eastern Enterprises*, 524 U.S. at 521 (quoting *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 71, n.15 (1978)).  Here, as in *Eastern Enterprises*, Defendants seek to impose severe retroactive liability on Hartford to which Hartford never agreed and could not foresee, based solely on Hartford's participation in a regulated sector.

Injunctive relief on a Takings claim is also appropriate where the "government entity has taken [] property for a private, not a public, use" because compensation alone does not suffice. *See Fideicomiso de la Tierra del Cano Martin Pena v. Fortuño*, 604 F.3d 7, 18 (1st Cir. 2010). "[T]he Supreme Court has long recognized, a taking—even if justly compensated—must serve a legitimate public purpose." *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1229 (C.D. Cal. 2002) (citing *Thompson v. Consol. Gas Corp.*, 300 U.S. 55, 80

---

[10] Five members of the Court considered the statute unlawful, with Justice Kennedy concurring and concluding that the law violated due process rather than the Takings Clause because the property interest at issue was insufficiently distinct.  524 U.S. at 539–50.  Unlike in *Eastern Enterprises*, the property here is sufficiently specific—reinsurance agreements—rather than past participation in the coal sector.

(1937)).  The government's invocation of an ostensible public use is insufficient to meet this requirement if that use is pretextual, *see 99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123 (C.D. Cal. 2001), or "legislatively unrestrained[,]"  *Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445, 461 (7th Cir. 2002).

The Commonwealth Officials here do not identify the public use.  The use, however, cannot be ensuring the continuity of benefits for injured Steward workers because the Workers' Compensation Trust Fund is designated to pay claims for uninsured periods.  *See* Compl. ¶ 22 (citing M.G.L.A. 152, § 65(2)(e)).  Nor can the public use be the government's self-interest in avoiding claims against the Fund.  *Cf. Cienega Gardens v. United States*, 331 F.3d 1319, 1334 n.27 (Fed. Cir. 2003) (holding that, where a statute is "tainted by a governmental object of self-relief[,]"  *i.e.*, "the Government seeks to shift the costs of meeting its legitimate public responsibilities to private parties[,]" it constitutes a taking) (quoting *United States v. Winstar Corp.*, 518 U.S. 839, 896–97 (1996)).

Finally, an injunction is available to prevent a taking when there is no adequate remedy or process available under law.  A key element of the adequacy of state remedies is the "availability of a process that is particularly aimed at providing compensation when government action effects a taking[,]" something which does not include access to general causes of action in state courts. *See Flores Galarza*, 484 F.3d at 16–20.  And such a process is inadequate—representing an "utterly pointless set of activities[,]"—when the challenged taking requires a transfer of funds rather than burdening tangible property of some kind.  *See Eastern Enterprises*, 524 U.S. at 521–22 (internal quotations omitted).

Here, there is no adequate process. No state compensation procedure exists to obtain relief, and a lawsuit to obtain "compensation" would be demanding that the Commonwealth Officials return with their left hands what they took with their right—a pointless exercise. Thus, injunctive and declaratory relief is available and necessary.

### 2.      Hartford's Claims Are Not Prohibited as Questions of State Law

The Commonwealth Officials do not address *Ex parte Young* with respect to Hartford's other claims. Instead, they try to characterize the *ultra vires* claim (Count 3) and portions of the declaratory judgment claim (Count 4) relating to the *ultra vires* actions solely as arising under state law. *See* ECF 15 at 6–7.[11] Not so.

The *ultra vires* claim Hartford raises is that the Commonwealth Officials acted without any authority at all, not that they acted in violation of state law. *See, e.g.*, *City of Providence v. Barr*, 954 F.3d 23 (1st Cir. 2020) (striking down as *ultra vires* an attempt by the federal government to impose conditions on federal grants that were not authorized by statute); *see also California v. U.S. Dep't of Transp.*, 808 F. Supp. 3d 291, 303 (D.R.I. 2025) (holding that a waiver of sovereign immunity "is not required for the States' claims that [Transportation] Secretary Duffy acted *ultra vires* . . . because sovereign immunity does not bar those claims"). The Commonwealth Officials had no authority whatsoever to license Steward retroactively (provisionally or otherwise) more than six months into a one-year licensure period, to publicly list Steward as self-insured when Steward did not meet mandatory requirements, or to require that a reinsurer become a primary insurer for all of an employer's workers' compensation claims. Indeed, the Commonwealth Officials' motion to dismiss is devoid of any reference to the state law under which they think Hartford's claims arise.

---

[11] Hartford addressed Count 2 in footnote 5 above.

That the Massachusetts workers' compensation laws provide the relevant factual background does not convert Hartford's claim for utter lack of authority into one arising under state law. This mischaracterizes *Pennhurst* and transforms the rule that federal courts should give way to states on routine issues of state statutory law into a blanket immunity from federal judicial scrutiny for constitutional violations by states.

Merely referring to state law to explain how the Commonwealth Officials violated the federal Constitution does not drag the complaint under *Pennhurst*'s penumbra. *Pennhurst* stands for the specific principle that federal courts may not order state officials to comply with state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). "The *Pennhurst* doctrine does not compel dismissal of claims for prospective relief against state officers in their official capacities for alleged violations of federal law simply because the party seeking such relief refers to state law in order to bolster their federal claim." *Doe v. Shibinette*, 16 F.4th 894, 903–04 (1st Cir. 2021) (quoting *Vega v. Semple*, 963 F.3d 259, 283–84 (2d Cir. 2020)). In *Shibinette*, the First Circuit held that where plaintiffs had alleged a constitutional violation and sought "an injunction . . . to provide probable cause hearings within the time that they contend due process demands that such hearings be held" (even though they had referred to a statutory three-day timeframe for such hearings), this was a federal constitutional claim allowed in federal court. 16 F.4th at 904. In other words, merely referencing state law does not convert a federal claim into one arising under state law.

Moreover, while the *Pennhurst* Court warned generally against federal courts "instruct[ing] state officials on how to conform their conduct to state law[,]" 465 U.S. at 106, that Court expressly acknowledged that a state officer may act *ultra vires* "when he acts 'without any authority whatever.'" *Id.* at 101 n.11 (quoting *Larson v. Domestic & Foreign Commerce Corp.*,

337 U.S. 682, 697 (1949)).[12]  As the *Larson* Court held, "where [an] officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions . . . [such] actions are *ultra vires* his authority and may be made the object of specific relief." 337 U.S. at 689.  Sovereign immunity thus "does not prevent federal courts from enjoining state officials from engaging in acts that the officials have no authority to take." *OA VW LLC v. Mass. DOT*, 76 F. Supp. 3d 374, 378 (D. Mass. 2015);[13] *see also Bangor Baptist Church v. State of Me., Dept. of Educational and Cultural Servs.*, 549 F. Supp. 1208, 1232 (D. Me. 1982) (finding some but not all regulations *ultra vires* and explaining that "[a] regulation fundamentally at odds with the manifest legislative design cannot be sustained simply because it is not technically inconsistent with the statutory language") (cleaned up); *Brown v. New York*, 975 F. Supp. 2d 209, 232 (N.D.N.Y. 2013) (denying motion to dismiss on *ultra vires* claim against state defendants when plaintiffs alleged unilateral administrative actions to change health benefits were conferred to state officials in relevant statute statute).

In short, Harford's claims are fundamentally federal in nature, and they fall squarely within *Pennhurst's* footnote 11 exception.

---

[12] Massachusetts state law is generally in accord.  *See New Hampshire Ins. Guar. Ass'n v. Markem Corp.*, 676 N.E.2d 809, 814 (Mass. 1997) (holding that an officer "may be said to act *ultra vires* only when he acts without any authority whatever") (internal quotation omitted); *Zoning Bd. of Appeals of Amesbury v. Housing Appeals Committee*, 933 N.E.2d 74, 82 (Mass. 2010) (treating as *ultra vires* the imposition of conditions on a rezoning decision that were outside the authority of the board to impose).

[13] This decision was vacated on September 23, 2015, on motion by the defendants, after the plaintiffs voluntarily and unilaterally dismissed their claim before consideration by the Massachusetts Supreme Judicial Court.  *See* Order of Dismissal, ECF. Doc. No. 81, *OA VW LLC et. al. v. Mass. DOT et. al.*, 1:13-cv-11028-NMG (D. Mass. Sept. 23, 2015).

### C.    Hartford's Declaratory Judgment Claim is Not Barred

Last, the Commonwealth Officials argue that Hartford's requests for declaratory relief are improper as indistinct from its demands for injunctive relief. ECF 15 at 14–15. This is unavailing for two reasons. *First*, as discussed above, Hartford's arguments for injunctive relief on its Takings and *ultra vires* claims are proper. The Commonwealth Officials gain nothing by arguing that declaratory relief mirrors injunctive relief, as both are permitted where *Ex parte Young* applies.

*Second*, declaratory relief is its own remedial category. It neither compels state action nor extracts funds from the treasury, and therefore cannot be collapsed into "relief barred by the Eleventh Amendment." *See Brito v. Garland*, 22 F.4th 240, 251 (1st Cir. 2021) (holding that declaratory relief "does not, in itself, coerce any party or enjoin any future action") (internal quotation omitted); *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir. 1992) (explaining declaratory judgments are "neither inherently legal nor inherently equitable"). For this reason, declaratory relief is especially appropriate when the disputed issue concerns parties' rights and duties under a regulatory scheme. *See Quinones v. Landron*, 99 F.2d 618, 620 (1st Cir. 1938) (holding that one of the benefits of the declaratory judgment cause of action is "the opportunity afforded to settle disputes arising over the powers, duties, and privileges of administrative officers, especially if the disagreement involved the construction of a statute").

While Commonwealth Officials cite *Cotto v. Campbell*, 126 F.4th 761, 772 (1st Cir. 2025) to argue that declaratory relief would be a prohibited "end run" around the Eleventh Amendment, this misstates the rule. This concern only applies when a party's request for declaratory relief is a disguised effort to award damages or obtain retroactive relief in spite of the prospective relief requirement. *Id.* at 772. That is not this case here: Hartford does not stand to obtain any compensatory damages if it prevails here. Rather, it will simply be declared as having no

16

obligation to pay certain workers' compensation claims.  Thus, the declaratory relief Hartford seeks does not run afoul of Eleventh Amendment immunity.

## V.    CONCLUSION

In sum, the Commonwealth Officials cannot act without any authority whatsoever to violate Hartford's constitutional rights and then assert that Hartford cannot seek redress in the Court of its choosing.  Sovereign immunity does not shield the unconstitutional and *ultra vires* conduct of the Commonwealth Officials.  For the foregoing reasons and others appearing in the record, Hartford respectfully requests that the Court deny, with prejudice and in its entirety, the Commonwealth Defendants' Motion to Dismiss Plaintiff's Complaint (ECF 15).

**REQUEST FOR ORAL ARGUMENT**

Hartford respectfully requests that the Court hear oral argument on its Opposition to the Commonwealth Defendants' Motion to Dismiss.

Dated: April 24, 2026

Respectfully submitted,

**STEPTOE LLP**

*/s/ Sarah D. Gordon*

Sarah D. Gordon (*pro hac vice*)
Michelle S. Kallen (*pro hac vice*)
sgordon@steptoe.com
mkallen@steptoe.com
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-3000

Alexander M. Wolf (BBO # 685374)
awolf@steptoe.com
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone:  713-221-2300
Facsimile:  713-221-2320

***Attorneys for Plaintiff***
***Hartford Casualty Insurance Company***

CERTIFICATE OF SERVICE

I, Sarah D. Gordan, hereby certify that, on the date listed below, I caused this Memorandum in Opposition to Commonwealth Defendants' Motion to Dismiss to be served upon all counsel of record by electronic mail and/or through the Court's ECF system.


Dated: April 24, 2026                          Respectfully submitted,

                                               */s/ Sarah D. Gordon*